**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

NICHOLAS BARBATI,                    )
                                     )
        Plaintiff,                )
                                     )
v.                                   )        Civil Action No. 5:11-0778
                                     )
BUREAU OF PRISONS, *et al.*,         )
                                     )
        Defendants.               )

**PROPOSED FINDINGS AND RECOMMENDATION**

On October 20, 2011, Plaintiff, acting *pro se* and incarcerated at FCI Beckley, filed his

Complaint in this matter claiming entitlement to relief pursuant to <u>Bivens v. Six Unknown Named</u>

<u>Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619

(1971).[1] (Document No. 1.) Plaintiff alleges that the BOP is improperly denying him telephone and

e-mail privileges. (<u>Id.</u>) Specifically, Plaintiff states as follows:

> I have indigent court appointed counsel. Staff is refusing me access to my counsel
> & refusing me access and the ability to contact news media resources through phone
> or e-mail. Staff is holding my mail for extended periods of time (Ref 6:11-cv-01211-
> GAP-KRS). I did not receive the 20 day notice to amend my complaint until after my
> action was dismissed. Staff has used policy and punishment to deny me
> communication with the outside world. Staff has restricted replies by mail from news
> media outlets citing security reasons. I am unable to contact my court appointed
> counsel in a timely manner (Ref 10-15970-cc, 10-15971-cc, 10-15972-cc).  Thus,
> providing me with ineffective assistance of counsel in the aforementioned cases. I
> am also receiving differential treatment because of my charges.

(<u>Id.</u>, pp. 4 - 5.) Plaintiff requests that the Court enter an order "allowing me to communicate with

counsel of record and established credible news media outlets by phone and/or e-mail so that I may

---

    [1]  Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less
stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally.
*See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

be able to communicate in a time efficient manner and be able to report on the conditions of my confinement to the outside world."[2] (Id., p. 5.)

As Exhibits, Plaintiff attaches the following: (1) A copy of the "Request for Inmate Telephone Restriction" concerning Plaintiff (Id., p. 8.); (2) A copy of Plaintiff's e-mail to the Warden dated April 18, 2011, regarding the restriction on Plaintiff's telephone privileges (Id., p. 9.); (3) A copy of Plaintiff's e-mail to the Warden dated May 23, 2011, regarding Plaintiff's telephone privileges (Id., p. 10.); and (4) A copy of Plaintiff's e-mail to the Warden dated October 3, 2011, regarding Plaintiff's e-mail restrictions (Id., pp. 11 - 12.).

By Order entered on October 21, 2011, the undersigned directed Plaintiff to either pay the $350 filing fee or file an Application to Proceed Without Prepayment of Fees and Costs. (Document No. 3.) On October 28, 2011, Plaintiff filed his Application to Proceed Without Prepayment of Fees and Costs. (Document No. 4.)

On November 7, 2011, Plaintiff filed an Exhibit in Support of his Complaint. (Document No. 6.) Plaintiff attaches a copy of a letter from his attorney, Timothy R. Saviello, dated October 25, 2011. (Id., p. 2.) In the letter, Attorney Saviello notes that he is having difficulty contacting Plaintiff by phone and requests that Plaintiff provide him with his counselor's name and phone extension.

---

[2] To the extent Plaintiff is alleging that the restriction on his telephone and e-mail access is violating his right to meaningful access to the courts, the undersigned finds his claim to be without merit. First, Plaintiff acknowledges that he is represented by counsel in the appeal of his criminal proceedings. *See Shrader v. Green*, 2010 WL 2925864 (S.D.W.Va. Mar. 15, 2010)(finding that "representation by counsel negates a prisoner's claim of inadequate access to the courts"). Additionally, the Court notes that "[a]lthough prisoners have a constitutional right to meaningful access to the courts, prisoners do not have a right to any particular means of access, including unlimited telephone use." *Engel v. Francis*, 2010 WL 3894122 (E.D. July 27, 2010)(*citing Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992)). It is clear that Plaintiff is communicating with defense counsel as Plaintiff attaches copies of letters from his attorney as Exhibits. (Document Nos. 6 and 8, p. 2.)

(Id.) Attorney Saviello explains that the "main switchboard at your facility is ineffectual in getting me through to anyone who can help." (Id.) Attorney Saviello further states that "[s]ince it appears you aren't going to be on the email system any time soon, phone calls and letters seem to be the way we have to go." (Id.)

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional

rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

**1.      Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may

4

not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate

6

that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance

7

procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Complaint, Plaintiff acknowledges that he did not exhaust his administrative remedies.

(Document No. 1, p. 3 and 10.) Plaintiff appears to contend that exhaustion should be excused because (1) he is being "stonewalled;" and (2) he "is being denied effective assistance of counsel."[4] (Id.) Plaintiff appears to argue that he is being stonewalled by the lack of a response. Section 542.18 provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Plaintiff, however, has failed to consider any absence of a response as a denial and proceed to the next level. Thus, Plaintiff's failure to exhaust is not excused based upon the Warden's alleged failure to timely respond.

Next, Plaintiff appears to contend that he is excused from exhaustion because denying him "effective assistance of counsel" will result in irreparable harm. The United States Supreme Court, however, has stated that it "will not read futility or other exceptions into statutory exhaustion requirements. . . ."[5] Booth v. Churner, 532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); also see Massey, 196 F.3d at 727("[T]here is no futility exception to the PLRA's exhaustion requirement."); Jacocks v. Hedrick, 2006 WL 2850639, * 5 (W.D.Va. Sept. 29, 2006)(finding that

---

[4] Plaintiff states that because "inmate is being denied effective assistance of counsel, inmate has the ability to bypass the administrative remedy process and file a 1983 directly." (Document No. 1, p. 10.)

[5] Plaintiff appears to rely on the exhaustion standard for Section 2241 Petitions. Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(citing *Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d. 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark." *Wright v. Warden*, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy).

inmate's alleged pain and suffering after the loss of his eye were not special circumstances that would excuse his failure to exhaust where he had filed prior grievances complaining of other matters). Based on the foregoing, the undersigned recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint. Notwithstanding Plaintiff's failure to exhaust, the undersigned will briefly consider the merits of his claim.

2.      **No Due Process Violation.**

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the

10

inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

To the extent Plaintiff alleges a liberty interest in retaining his telephone privileges, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges are matters clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Furthermore, it is well established that an inmate has no absolute right to telephone privileges. See Smith v. Roper, 12 Fed.Appx. 393, 396 (7th Cir. 2001), cert. denied, 534 U.S. 1093, 122 S.Ct. 839, 151 L.Ed.2d 718 (2002)("In light of Sandin, the deprivations that Smith suffered as a result of the disciplinary proceedings - namely, 22 days in segregation, a six-month loss of privileges associated with his demotion to C class, and six days without phone privileges - do not implicate a liberty interest."); Freitas v. Ault, 109 F.3d 1335, 1337-38 (8th Cir. 1997)(finding that an involuntary transfer to a higher-security facility and loss of work and phone privileges did not constitute atypical and significant hardship); Principio v. McGinnis, 2007 WL 2344872, * 2 (W.D.N.Y. Aug. 15, 2007)(finding that "60 days of keeplock with loss of telephone, packages, recreation and conjugal visits," was not an atypical or significant

hardship); Richardson v. Johnson, 2001 WL 360843, * 1 n. 1 (N.D.Tex. April 5, 2001)(finding that phone-privilege restrictions, like commissary and recreation restrictions, do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life); James v. Odom, 2000 WL 1136563 *5 (S.D.Ala. May 30, 2000)(finding a 45-day restriction on inmate's "store, phone, and visiting privileges" did not constituted an atypical or significant hardship). Accordingly, to the extent that Plaintiff is claiming his liberty interest in retaining telephone privileges was violated, the undersigned finds that Plaintiff's claim is without merit.

**3.** **First Amendment Claim.**

Finally, Plaintiff appears to argue that the telephone and e-mail restrictions violate his rights under the First Amendment. Prisoners have a First Amendment right to communicate with the outside world. See Valdez v. Rosenbaum, 302 F.3d 1039 (9th Cir. 2002); Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1989). Prisoners, however, "have no First Amendment constitutional right to access email." Grayson v. Federal Bureau of Prisons, 2012 WL 380426, * 3 (N.D.W.Va. Feb. 6, 2012)(citing Rueb v. Zavaras, 2011 WL 839320, * 6 (D.Colo. Mar. 7, 2011). Additionally, [t]here is no constitutional or federal statutory right to use a telephone while in prison." United States v. Alkire, 82 F.3d 411 (4th Cir. 1996)(unpublished opinion). Although there is no constitutional right to telephone access, the use of a telephone provides an inmate a means of exercising his First Amendment right to communicate with the outside world. See Valdez, 302 F.3d at 555; also see United States v. Footman, 215 F.3d 145, 155 (1st Cir. 2000)(In the First Amendment context "prisoners have no *per se* constitutional right to use a telephone"). An inmate's right to telephone access to communication with the outside world, however, is not unlimited. Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994)("an inmate has no right to unlimited telephone use"); Woods v.

Federal Bureau of Prisons, 2011 WL 886071, * 2 (W.D.Va. Mar. 14, 2011). Thus, prison officials may properly restrict an inmate's telephone privileges if doing so is reasonably related to a legitimate prison security or administrative interest. See Benzel, 869 F.2d at 1108; also see Woods, 2011 WL 886071 at * 2,  Harrison v. Federal Bureau of Prisons, 464 F.Supp.2d 552, 555 (E.D.Va. 2006). In the instant case, the BOP restricted Plaintiff's telephone privileges based upon his history of using the telephone for illegal conduct, such as making false threats.[6] (Document No. 1, p. 8.) The undersigned finds that the BOP had a legitimate interest in restricting Plaintiff's telephone privileges. Based on the foregoing, the undersigned finds that Plaintiff's above claim should be dismissed.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

---

[6]  According to Plaintiff's "Request for Inmate Telephone Restriction," Unit Manager Michael Show requested that Plaintiff's telephone privileges be restricted based on the following:

> According to his PSI, Barbati was convicted of phoning false threats towards the Space Shuttle launch, multiple false calls to law enforcement agencies worldwide, and false calls to the U.S. Coast Guard of false bomb threats and sinking ships that resulted in a large search at tonight in choppy seas. Inmate Barbati was designated with a Public Safety Factor of Phone Abuse. As such policy requires a review to determine his appropriateness for telephone privileges. Additionally, policy requires that inmate Barbati be provided access to the phone at least once a month.

(Document No. 1, p. 8.) Based on Plaintiff's "propensity to use the phone for illegal conduct and the Bureau's requirement to provide him one phone call a month," Unit Manager Snow recommended that "Inmate Barbati be approved for 15 minutes a month [and] Inmate Barbati's conduct will be evaluated by his unit team at his subsequent program reviews to determine if additional time is warranted and proper action taking at that time." (*Id.*) The Warden approved the telephone restriction on May 19, 2011. (*Id.*)

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: August 22, 2012.

R. Clarke VanDervort
United States Magistrate Judge

14